**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
MERRILL WARBOYS and KATHRYN WARBOYS,

                           Plaintiffs,

        -against-

SHI-III BRIARCLIFF REIT, LLC; BRIARCLIFF
MANOR INVESTORS, LLC; ANDRON
CONSTRUCTION CORP.; and VISTA
CONSTRUCTION & LANDSCAPE CONTRACTORS,
INC.,

                           Defendants.
------------------------------------------------------------------------X
ANDRON CONSTRUCTION CORP.,

                       Third-Party Plaintiff,

        -against-

AMERICAN PANEL TEC/NY LLC,

                       Third-Party Defendant.
------------------------------------------------------------------------X

**DECISION**
**AND ORDER**

19 Civ. 2491 (PED)

**PAUL E. DAVISON, U.S.M.J.:**

## I.  INTRODUCTION

This action arises from an alleged slip and fall on January 18, 2018.  Plaintiff Merrill

Warboys was delivering materials to a construction site located in Briarcliff Manor, New York

and allegedly slipped and fell on a patch of black ice.  The construction site was owned by

Defendants SHI-III Briarcliff Reit, LLC, and Briarcliff Manor Investors, LLC (the "Briarcliff

LLCs").  The Briarcliff LLCs retained Defendant Andron Construction Corp. ("Andron") as the

general contractor for the construction project.  Andron hired Vista Construction & Landscape

Contractors, Inc. ("Vista") for snow and ice removal services.  Andron retained American Panel

Tec/NY LLC ("American Panel") to supply the project with wall panels. American Panel retained Plaintiff's employer to deliver the panels to the Briarcliff Manor construction site.

Before me are motions for summary judgment filed by American Panel [Dkt. 111], Andron on behalf of itself and the Briarcliff LLCs [Dkt. 116], and Vista [Dkt. 121].[1] For the reasons that follow, American Panel's motion is **GRANTED**. Andron's motion is **GRANTED** in part and **DENIED** in part. Vista's Motion is **GRANTED** in part and **DENIED** in part.

## II.  BACKGROUND

A.    **Statement of Facts**

The following facts are gathered from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern District of New York, and from the pleadings, affidavits, affirmations, and exhibits submitted by the parties in support of their motions. The following facts are undisputed unless stated otherwise.

On February 7, 2017, Andron entered into a contractual agreement with the Briarcliff LLCs for the construction of a senior living community in Briarcliff Manor, New York, pursuant to which Andron agreed to serve as the general contractor for the construction project. On April

---

[1]      The parties have submitted the following for the Court's review:

Andron's declarations in support of its motion with attached exhibits [Dkt. 117, 118], Rule 56.1 statement [Dkt. 119], memorandum of law [Dkt. 120], opposition to Vista's motion [Dkt. 126], opposition to American Panel's motion [Dkt. 134], Rule 56.1 counter statement [Dkt. 136], and replies in support of its motion [Dkt. 144-46]; Vista's Rule 56.1 statement [Dkt. 115, 123], memorandum of law with attached exhibits [Dkt. 122], opposition to Andron's motion [Dkt. 124], Rule 56.1 counter statements [Dkt. 125, 143], and reply in support of its motion [Dkt. 142]; American Panel's memorandum of law [Dkt. 112], declaration in support with exhibits [Dkt. 113], opposition to Andron's motion [Dkt. 128, 137], Rule 56.1 statement [Dkt. 130], and reply in support its motion; [Dkt. 147] and Plaintiffs' opposition to Vista's motion with attached exhibits [Dkt. 127, 131], opposition to Andron's motion [Dkt. 129], and Rule 56.1 counter statements [Dkt. 132, 133, 135].

29, 2017, Andron entered into a contractual agreement with American Panel for the design and supply of pre-fabricated wall panels for the project. Andron also contracted with non-party Precision Carpentry of Westchester ("Precision") to receive, transport, and install the wall panels at the construction site. American Panel contracted with non-party Harris Camden Terminal Co. ("Harris Camden") to deliver the wall panels to the construction site. Plaintiff was employed as a truck driver for Harris Camden. During the relevant period, Brian Pease was employed by Andron as the superintendent for the construction project. John Daley was Andron's general supervisor for the project, and Paul Boniello was the Andron senior project manager.

In 2017, Andron retained Vista for snow and ice removal services at the construction site. Fernando Borba was employed by Vista as a manager. The parties agree that a written contract was in effect from December 14, 2017 through January 8, 2018. According to Andron, Vista and Andron entered into a "short form" agreement for snow removal covering the period of January 17 and 18, 2018. According to Vista, no such agreement existed at that time, but Vista renewed its contract with Andron beginning January 26, 2018.

Rain began to fall in the early morning hours of January 17, 2018 at the construction site. At approximately 7:30a.m. that day, the rain transitioned to snow, and roughly 1.5 inches of snow accumulated. A Vista employee arrived at the construction site on January 17 and performed snow and ice removal services from shortly before 6:00a.m. to shortly before 8:00a.m. that day. On January 18, 2018, Andron requested additional snow and ice removal services from Vista. A work description from that day reads, "salt parking lots and main road to site," and "apply ice melt at building entrances." A Vista employee arrived that day at approximately 8:37a.m. and applied ice melt on the roads and parking areas and removed snow and ice from a roof. It is unclear what, if any, snow and ice removal was performed in the

3

loading area where the alleged injury took place.

Plaintiff began working on January 18, 2018 at approximately 5:00a.m. when he picked up pre-fabricated wall panels from American Panel, which were loaded onto a flat-bed truck. Plaintiff drove to the construction site in the truck and arrived at approximately 9:30a.m. to 10:30a.m. Andron employees were present at the construction site from approximately 6:30a.m., but the exact time and their identities are in question. Nevertheless, it is undisputed that Andron employees, along with Precision employees, were present at the time Plaintiff arrived. Plaintiff was directed to unload the wall panels at the construction site and to pick up an empty trailer belonging to Harris Camden that was located in the loading area elsewhere on the site. After Plaintiff delivered the wall panels, he drove the truck to the loading area to retrieve the empty Camden Harris trailer. Plaintiff parked the truck in the designated loading area and stepped outside of the truck to confirm he had parked in the correct space. Plaintiff alleges that he slipped on a patch of black ice after exiting his truck, causing his injuries.

## B.    Procedural History

Plaintiffs Merrill and Kathryn Warboys commenced the instant action on March 20, 2019 against the Briarcliff LLCs, Andron, and American Panel. [Dkt. 1.] Plaintiffs filed an Amended Complaint eliminating American Panel and adding Vista as a defendant. [Dkt. 36.] Plaintiffs' first cause of action asserted claims under New York Labor Law §§ 200 and 241(6), as well as common law negligence for failing to provide Plaintiff a safe place to work. Plaintiffs' second cause of action alleged unspecified violations of the New York State Industrial Code, County of Westchester, Village of Briarcliff, and the Occupational Safety and Health Administration ("OSHA"). [Dkt. 36, ¶44.] Plaintiff's third cause of action asserted a claim for loss of consortium on behalf of Kathryn Warboys. [Dkt. 36, ¶48.]

Vista asserted crossclaims against the Briarcliff LLCs and Andron for contractual and common law indemnity.  [Dkt. 50.]  Andron asserted crossclaims against the Briarcliff LLCs, Vista, and American Panel[2] for contractual and common law indemnity, as well as breach of contract and breach of warranty.  [Dkt. 52.]  Per stipulation and order, Andron accepted a tender of defense from the Briarcliff LLCs.  [Dkt. 54.]  Subsequently, Andron filed a third-party complaint against American Panel asserting claims for contractual indemnity, failure to procure and maintain liability insurance, negligence, and contribution.  [Dkt. 84.]  American Panel asserted counter-claims against the Briarcliff LLCs and Andron that any injury suffered by the Plaintiffs were caused by the tortious conduct of the other parties, and for contractual and common law indemnity and contribution in the event that Plaintiffs' recover from American Panel.  [Dkt. 90.]  Andron also sought leave to file a third-party complaint against Precision, which was denied.  [Dkt. 100, 106.]

## III.  LEGAL STANDARD

**A.      Standard for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material within the meaning of Rule 56 where it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. at 248.  In determining whether the moving

---

[2]      American Panel was removed from the action and therefore not a coparty at the time of filing Andron's answer to the amended complaint.  Therefore the crossclaims against American Panel were not permitted.  *See* Fed. R. Civ. P. 13(g).

party has met its burden of proving that there are no genuine disputes of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quotation and citation omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996). On the other hand, summary judgment must be denied if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See Anderson*, 477 U.S. at 250.

## B. New York Labor Law § 200 and Common Law Negligence

New York Labor Law § 200 is the codification of the common law duty of owners and general contractors to maintain a safe work site. *Dwyer v. Goldman Sachs Headquarters LLC*, 819 F.Supp.2d 320, 329 (S.D.N.Y. 2011). Courts, therefore, analyze common law negligence claims together with claims under § 200 simultaneously. *Id.* at 329 n.4.

There are two types of § 200 claims, those involving the manner in which work is performed, and those involving a dangerous or defective condition at a work site. *Dwyer*, 819 F.Supp.2d at 329. To be held liable for injuries arising from the manner in which work was

performed, a defendant "must have actually exercised supervision and control over the work performed at the site." *Id.* (citing *McLeod v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter Day Saints,* 41 A.D.3d 796, 798 (N.Y. App. Div. 2d Dep't 2007)).  General supervisory authority alone is insufficient, and the defendant must have controlled the specific manner in which a plaintiff performed his or her work.  *Id.*

Where, as here, a plaintiff's injuries stem from a dangerous condition on the premises, a defendant may be liable "if it had control over the work site and either created the dangerous condition or had actual or constructive notice of it."  *Id.*  (citing *Martinez v. City of N.Y.,* 73 A.D.3d 993, 998 (N.Y. App. Div. 2d Dept. 2010)).  General knowledge of a potential hazard, for example that an area may become slippery during inclement weather, is insufficient to establish constructive notice of a specific condition causing a plaintiff's injury.  *Solazzo v. New York City Transit Auth.*, 6 N.Y.3d 734, 735 (N.Y. 2005).

Because a finding of negligence must be based on a breach of duty owed to an injured party, "a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party."  *Klein v. City & County Paving Corp.*, Case No. 16 Civ. 2264 (NRB), 2018 WL 4265885, at *3 (S.D.N.Y. Sept. 5, 2018) (citing *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 138 (N.Y. 2002)).  In general, third-party sub-contractors do not owe a duty to a non-contracting plaintiff and cannot be held liable in tort for simply breaching their contractual obligations.  "[O]rdinarily, breach of a contractual obligation will not be sufficient in and of itself to impose tort liability to noncontracting third parties upon the promisor."  *Id.*  (citing *Church ex rel. Smith v. Callanan Indus., Inc.*, 99 N.Y.2d 104, 111 (N.Y. 2002)).

However, New York recognizes three situations in which a party who enters into a

contract to render services may be said to have assumed a duty of care, and thus may be potentially liable for negligence, to third-parties. *See Espinal*, 98 N.Y.2d at 138. First, a contracting party may be liable to a third-party where it "launches a force or instrument of harm." Second, a contractor may be liable where the injured party "detrimentally relies on the continued performance of a contracting party's duties. Third, a contractor may be liable where it has "entirely displaced the other party's duty to maintain the premises safely." *Id.* at 140.

The first *Espinal* exception may apply where the contracting party is engaged in affirmatively discharging a contractual obligation and creates an unreasonable risk of harm to others or increases that risk. *Klein*, 2018 WL 4265885 at *3 (citing *Church*, 99 N.Y.2d at 111). With regard to contractors performing snow removal services, New York courts have held that a snow removal contractor is not liable to third-parties simply by plowing the snow. "As we noted in *Espinal*, by merely plowing the snow, as required by the contract, defendant's action could not be said 'to have created or exacerbated a dangerous condition.'" *See id.* at *7 (citing *Fung v. Japan Airlines Co.*, 9 N.Y.3d 351, 361 (N.Y. 2007)).

Instead, in order to establish liability under the first *Espinal* exception, a plaintiff must show that "the contractor left the premises in a more dangerous condition than he or she found [it]." *Klein*, 2018 WL 4265885 at *7 (citing *Foster v. Herbert Slepoy Corp.*, 76 A.D.3d 210, 215 (N.Y. App. Div. 2d Dep't 2010)). The first *Espinal* exception would not apply where a contractor merely fails to remove snow or ice from a location, but it may apply where the residue of snow removal efforts could be said to have caused the icy condition or increased the risk of harm to others. *Haskin v. U.S.*, Case No. 10 Civ. 5089 (MKB), 2015 WL 3971730, at *12 (E.D.N.Y. June 30, 2015) (collecting cases).

## C.    Contractual Indemnity

Under New York law, the right to contractual indemnity depends upon the specific language of the contract. *In re Bridge Const. Services of Florida, Inc.*, 140 F.Supp.3d 324, 331 (S.D.N.Y. 2015). A "contract that provides for indemnification will be enforced as long as the intent to assume such a role is sufficiently clear and unambiguous." *Dwyer*, 819 F.Supp.2d at 330-31. However, a party cannot seek indemnification for its own negligence. *Id.* at 331 (citing N.Y. General Obligations Law § 5-322.1). N.Y. General Obligations Law § 5-322.1 states in pertinent part:

> A covenant, promise, agreement or understanding . . . relative to the construction, alteration, repair or maintenance of a building . . . purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable.

N.Y. General Obligations Law § 5-322.1. Where an indemnification provision violates N.Y. General Obligations Law § 5-322.1, the entire provision is void. *Bright v. Tishman Const. Corp. of New York*, Case No. 95 Civ. 8793(DLC), 1998 WL 63403, at *4 (S.D.N.Y. Feb. 17, 1998) (citing *Itri Brick & Concrete Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 786, 795-96 (N.Y. 1997)).

## D. Common Law Indemnity and Contribution

New York courts also recognize claims for common law indemnity and contribution. *See Goodman v. Port Auth. Of New York & New Jersey*, 850 F.Supp.2d 363, 390 (S.D.N.Y. 2012). New York law provides for contribution claims by statute:

> [T]wo or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

N.Y. C.P.L.R. 1401. However, the New York contribution statute "may not be invoked to apportion liability arising solely from breach of contract." *Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.*, 769 F.Supp.2d 322, 326 (S.D.N.Y. 2011).

To establish a claim for common law indemnification, "the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident." *Hernandez v. GPSDC (New York) Inc.*, Case No. 04 Civ. 127 (GWG), 2008 WL 220636, at *3 (S.D.N.Y. Jan. 28, 2008) (citing *Correia v. Professional Data Mgt.,* 259 A.D.2d 60, 65 (N.Y. App. Div. 1st Dep't 1999)). However, common law indemnity is barred "where the party seeking indemnification was itself at fault." *Goodman*, 850 F.Supp.2d at 390 (internal citations omitted).

## IV. DISCUSSION

For clarity and efficiency, the relief sought by the parties may be divided into two categories: summary judgment concerning the tort claims between Plaintiffs and Defendants, and summary judgment concerning the contract claims among the Defendants and third-party Defendant. I first address the tort claims, followed by the contract claims. With regard to the tort claims, Andron, on behalf of itself and the Briarcliff LLCs, as well as Vista move to dismiss the entirety of Plaintiffs' second amended complaint. Plaintiffs oppose both motions.[3]

With regard to the contract claims, Andron moves for summary judgment to grant its crossclaims for contractual and common law indemnity and breach of contract and warranty against Vista, and to dismiss Vista's crosslcaims for contractual and common law indemnity.

---

[3] Plaintiffs do not move for summary judgment.

Vista moves to dismiss Andron's crossclaims against Vista.[4]  Andron also moves for summary

judgment to grant its counterclaims for contractual indemnity, failure to procure and maintain

liability insurance, negligence, and contribution against American Panel, and to dismiss

American Panel's counterclaims.  American Panel moves to dismiss Andron's counterclaims.[5]

A.      **Plaintiffs' First Cause of Action – N.Y. Labor Law and Common Law Negligence**

1.      **Claims Against the Briarcliff LLCs**

Andron moves, on behalf of the Briarcliff LLCs, to dismiss Plaintiffs' Labor Law § 200

and negligence claims on the basis that the Briarcliff LLCs had no actual or constructive notice

of the black ice on which Plaintiff allegedly slipped.  Plaintiff argues that whether the Briarcliff

LLCs had notice is a question of fact.

Looking at the evidence in the light most favorable to Plaintiffs, Plaintiffs have not

established that a reasonable jury could find that the Briarcliff LLCs had notice of the alleged

dangerous condition.  The evidence demonstrates that there were no Briarcliff employees present

on or involved with the construction project, and Plaintiffs have not pointed to anyone from the

Briarcliff LLCs who may have had notice.  The only identified individual associated with the

Briarcliff LLCs was Matthew Phillips, the executive vice president of Senior Lifestyle, who

signed the contract retaining Andron on behalf of the Briarcliff LLCs.  Plaintiff has not alleged

that Phillips, nor anyone else from the Briarcliff LLCs, new about the dangerous condition.

Plaintiffs assert that the Briarcliff LLCs had constructive knowledge because the

presence of black ice was open and obvious and because it had snowed.  However, general

knowledge of the possibility of slippery conditions is insufficient under New York law to

---

[4]      Vista does not seek summary judgment on its crossclaims against Andron.

[5]      American Panel does not seek summary judgment on its counterclaims against Andron.

establish notice of a dangerous condition. *Solazzo*, 6 N.Y.3d at 735. None of the witnesses who testified indicated the presence of Briarcliff LLC employees at the construction site, nor can Plaintiff identify anyone from the Briarcliff LLCs who was present and observed the black ice. Other than general knowledge of the possibility of slippery conditions, Plaintiff points to no evidence that could suggest to a reasonable jury that the Briarcliff LLCs has sufficient knowledge of the black ice on the premises.

Instead, the evidence shows that the Briarcliff LLCs' knowledge of the construction project was limited to daily reports completed by Andron's superintendent, Brian Pease. Mr. Pease completed a report on January 17, 2018 which listed "overcast, Snow" under "conditions," as well as temperatures between 30 and 60 degrees. [Plaintiffs' Exhibit K, Dkt. 127-16.] The January 18, 2018 daily report listed temperatures of 20 to 30 degrees with clear weather conditions. [Plaintiffs' Exhibit L, Dkt. 127-17.] Both reports contained a list of tasks that were performed that day, and the January 18, 2018 mentioned snow removal. However, neither report mentioned the presence of black ice in the area where Plaintiff was allegedly injured. To that end, a reasonable jury could not find that the Briarcliff LLCs had actual or constructive notice of the specific hazard which caused Plaintiff's injuries. Accordingly, Plaintiff cannot establish that the Briarcliff LLCs owed him a duty under Labor Law § 200 or common law negligence, and the Briarcliff LLCs are entitled to summary judgment as to these claims.

### 2. Claims Against Andron

Andron similarly seeks to dismiss Plaintiff's Labor Law § 200 claims against itself, however Plaintiffs raise a triable issue of fact as to whether Andron had actual notice of the black ice. It is undisputed that the project site was open that day, and employees were already present prior to Plaintiff's injury. Plaintiff testified that someone had guided him to the location

where he was injured, and he was instructed by onsite personnel where to park his truck. He also testified that he witnessed employees chopping and removing ice from the area.

Mr. Daley, the Andron general supervisor, testified that he was responsible for coordinating panel deliveries from American Panel. He stated that he generally arrived at the construction site at 6:30a.m., and that either he or his employees would be present in the designated loading area for deliveries. Mr. Boniello, the Andron senior project manager, testified that he did not specifically recall being present on the site that day, but the January 18, 2018 daily report indicates that he was present that day, and Mr. Boniello testified that he would normally arrive onsite at 6:30a.m., prior to Plaintiff's alleged injury. Mr. Pease testified that as the Andron superintendent, he was responsible for worker safety, including in the parking lot areas. He testified that he typically arrived onsite at 6:00a.m., and that part of his duties included monitoring areas for ice and snow conditions. Based on this testimony, Plaintiffs have raised a triable issue of fact as to whether Andron had notice of the hazard.

Andron also asserts that summary judgment is appropriate because it did not create the dangerous condition giving rise to the injury, nor did it supervise or control Plaintiff's work. However, these arguments are inapplicable here. Plaintiff alleged that he was injured because of a dangerous condition on the premises and need only show that Andron had control over the worksite and had notice of the dangerous condition. *Dwyer*, 819 F.Supp.2d at 329. Whether Andron created the condition is not relevant where these two elements are met, and whether Andron exercised supervisory control over Plaintiff's work would only be relevant where the alleged injury occurred because of the manner in which the work was performed. *Id.*

Lastly, Andron seeks to dismiss Plaintiffs' claims based on the "storm in progress" exception. Under New York law, property owners may not be held liable for injuries occurring

as the result of snow and ice on the property while a storm is in progress, and until a reasonable time has passed to allow the property owner to cure any hazards. *Porcari v. S.E.M. Mgmt. Corp.*, 184 A.D.2d 556, 557 (N.Y. App. Div. 2d Dep't 1992). New York courts have acknowledged that this rule may apply to general contractors. *Simon v. Granite Bldg. 2, LLC*, 170 A.D.3d 1227, 1231 (N.Y. App. Div. 2d Dep't 2019).

Both Andron and Plaintiff submitted meteorological evidence. Viewing this evidence in the light most favorable to the non-moving party, a reasonable jury could find that there was no storm in progress and that the storm had already abated well before Plaintiff arrived on the site, based on Plaintiff's expert's findings and Andron's January 18, 2018 report indicating clear weather conditions. Based on the undisputed fact that someone from Vista had arrived in the early morning hours of January 18, 2018 to clear the snow, a reasonable jury could also find that a reasonable amount of time had passed to allow for snow removal efforts. Because Plaintiff raises a triable issue of material fact, the "snow in progress" doctrine does not warrant summary judgment. Accordingly, Andron is not entitled to summary judgment as to Plaintiff's claims under § 200 or common law negligence.

### 3. Claims Against Vista

Vista seeks summary judgment on Plaintiffs' Labor Law § 200 and negligence claims on the basis that it owed no duty to Plaintiff, a third-party with whom Vista had no contractual privity, relying on the general rule that a snow removal contractor cannot be held liable to third-parties simply by agreeing to remove snow. *Klein*, 2018 WL 4265885 at *3. However, Plaintiff raises a triable issue of fact as to first *Espinal* exception, that Vista created an unreasonable risk of harm. *Haskin*, 2015 WL 3971730, at *12.

Plaintiffs raise a triable issue of fact as to whether Vista's snow removal efforts created or exacerbated the dangerous condition leading to the alleged injury. Plaintiff testified that when he arrived at the construction site, he observed that piles of snow had been pushed to the sides of the road. Mr. Borba, the Vista manager, testified that it was Vista's general practice to pile snow onto the sides of the road and parking lots. Plaintiff alleged that the mounds of snow around the parking lot melted, refroze, and solidified, creating "slopes" around the parking area. A reasonable jury could find that the mounds of snow caused the rainwater from the day before to pool into the parking lot, which froze when the rain turned to snow. New York courts have found that the act of piling up snow, which then melts and refreezes, could constitute an affirmative act constituting negligence. *Eisenberg v. Town of Clarkstown*, 172 A.D.3d 683, 684 (N.Y. 2019). Thus, Plaintiffs raise a triable issue of fact as to the first *Espinal* exception.

Vista raises the same "snow in progress" argument as did Andron. As a threshold matter, Vista fails to establish that the "snow in progress" rule applies to snow removal contractors, which pertains to landowners and general contractors. *See, e.g.*, *Smith v. Christ's First Presbyterian Church of Hempstead*, 93 A.D.3d 839, 839-40 (N.Y. App. Div. 2d Dep't 2012) (applying the snow in progress rule to landowners and not snow contractors). Regardless, this argument does not warrant summary judgment for the reasons set forth above. Accordingly, because Plaintiffs have raised triable issues of fact, Vista is not entitled to summary judgment as to Plaintiffs' § 200 and negligence claims.

### 4. Plaintiffs' Labor Law § 241(6) Claims

All Defendants have moved to dismiss Plaintiffs' New York Labor Law § 241(6). In response, Plaintiffs voluntarily withdraw "any claims as to liability pursuant to Labor Law §

241(6)." [Dkt. 129 at 2.] Accordingly, the Court need not address the merits of Defendants' motions, and these claims are dismissed.

**B.     Plaintiffs' Second Cause of Action – Regulatory Violations**

Neither Defendant expressly addressed Plaintiff's second cause of action, which alleged unspecified violations of the New York State Industrial Code, the County of Westchester, the Village of Briarcliff Manor, and OSHA, other than Andron and Vista's general prayers for relief to dismiss "all" claims against them. Additionally, Plaintiffs objected to dismissal of their Labor Law § 200, but not to the dismissal of these claims.

Where a non-moving party submits a partial response arguing that summary judgment should be denied as to some claims but not mentioning others, that response "may be deemed an abandonment of the unmentioned claims." *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014). "Even '[w]here abandonment by a counseled party is not explicit,' a court may infer abandonment 'from the papers and circumstances viewed as a whole.'" *Camarda v. Selover*, 673 Fed. Appx. 26, 30 (2d Cir. 2016) (citing *Jackson*, 766 F.3d at 196).

Here, there has been no mention of these claims since Plaintiffs filed the second amended complaint, based on the papers before the Court and the proceedings held before me. Plaintiffs have actively pursued the Labor Law § 200 claim but voluntarily withdrew the claims under Labor Law § 241(6). Additionally, Plaintiffs have not specified what the second cause of action would entail, nor have Plaintiffs indicated specific regulations or OSHA guidelines which the Defendants allegedly violated. Accordingly, I find that these claims have been abandoned, and that the Defendants are entitled to summary judgment to dismiss the second cause of action.

**C.     Plaintiffs' Third Cause of Action – Loss of Consortium**

Under New York law, a spouse's claim for loss of consortium does not exist in common

law independent of the injured spouse's right to maintain an action for injuries. *Maidman v. Stagg*, 82 A.D.2d 299, 302 (N.Y. 1981). Because a claim for loss of consortium is derivative of the spouse's underlying tort claims, such claims must be dismissed to the extent that the underlying tort claims are dismissed. *Giuffra v. Vantage Travel Serv., Inc.*, Case No. 13 Civ. 6880, 2015 WL 3457246, at *5 (S.D.N.Y. June 1, 2015).

Accordingly, the Briarcliff LLCs are entitled to summary judgment as to the claim for loss of consortium. Andron and Vista are not entitled to summary judgment as to loss of consortium because Plaintiff's tort claims against them also survive.

**D.     Contract Claims**

**1.     Andron's Crossclaims Against Vista**

**a.     Contractual Indemnity**

Andron seeks summary judgment on its claim for contractual indemnity against Vista, which Vista moves to dismiss on the basis that they had know written agreement in effect on January 17 and 18, 2019. Neither party is entitled to summary judgment, however, because there are triable issues of fact as to whether a valid written agreement was in place when the alleged injury occurred.

The parties agree, and the evidence shows, that Andron and Vista had a written agreement in effect from December 14, 2017 through January 8, 2018. [Andron's Exhibit Q, Dkt. 117-18.] Although, curiously and without explanation, this agreement was dated January 17, 2018 and signed on January 23, 2018. In any case, this agreement contained an indemnity provision where Vista agreed to "indemnify and hold harmless us [Andron] and the Owner [the Briarcliff LLCs] from all such claims and all expenses from such claims," where "such claims" included personal injury. [Exhibit Q, Dkt. 117-18 at 1, Section I.]

On January 23, 2018, Andron's Chief Operating Officer, Charles Winter, signed a "Subcontract Change Order" that stated that Vista would perform snow removal on January 17 and 18, 2018. [Plaintiffs' Exhibit M, Dkt. 127-18.] The "Subcontract Change Order" was not signed by anyone from Vista, although it was made to the attention of Lori Castelli, a Vista employee, and it is undisputed that an employee from Vista performed snow removal services on January 17 and 18, 2018. Andron asserts that, based on the "Subcontract Change Order," the original agreement between Andron and Vista was in effect when the alleged injury occurred. While the original contract contained an indemnity provision, the "Subcontract Change Order" contained no such provision.

This ambiguous document creates a triable issue of fact as to whether the original contract was in effect during the relevant period. To the extent that a provision for contractual indemnity is enforceable, it must be clear and unambiguous that Vista intended to assume that responsibility during the relevant period. *Dwyer*, 819 F.Supp.2d at 330-31. A reasonable jury could find that Vista had not agreed to indemnify Andron during the relevant period, given the fact that the original agreement expired on January 8, 2018, and the "Subcontract Change Order" post-dated the injury. Similarly, a reasonable jury could find that Vista had agreed to accept that responsibility, given the language in the original agreement and the fact that Vista performed snow removal services pursuant to the contract on the day the alleged injury occurred. Thus, Andron is not entitled to summary judgment on its crossclaim against Vista, nor is Vista entitled to summary judgment to dismiss this claim.

### b. Common Law Indemnity

Next, Andron seeks summary judgment on its claim for common law indemnity against Vista, which Vista moves to dismiss. Neither party is entitled to summary judgment because

there are triable issues of fact as to whether Vista and Andron were each negligent. *Correia*, 259 A.D.2d at 65; *Goodman*, 850 F.Supp.2d at 390. As stated above, Plaintiffs have raised triable issues of fact, and a reasonable jury could find that either Andron or Vista, or both, were negligent in causing Plaintiff's injuries. Thus, neither party is entitled to summary judgment.

### c.    Breach of Contract and Warranty

Finally, Andron seeks summary judgment on its claim that Vista breached its agreement by failing to acquire insurance, which Vista moves to dismiss. The original contract contains a provision requiring Vista to obtain liability insurance and to name Andron and the Briarcliff LLCs as additional insureds. [Exhibit Q at 1, Section I.] Vista has not come forward with any such insurance policy, and instead relies on its argument that the original agreement was not in force at the time. To the extent a reasonable jury could find that the contract was not in effect at the time, Vista could not have been said to have breached its obligations to Andron in this action, and so Andron is not entitled to summary judgment. Similarly, to the extent a reasonable jury could find that the contract was in place during the relevant period, Vista has failed to show that it obtained proper insurance. As such, Vista is not entitled to summary judgment.

### 2.    Vista's Crossclaims Against Andron

### a.    Contractual Indemnity

Andron moves to dismiss Vista's claims for contractual and common law indemnity. Vista's claim for contractual indemnity is most precarious, given Vista's argument that no contract existed during the relevant period. Vista has also failed to come forward with any evidence that Andron agreed to indemnify Vista. Even when viewing the evidence in the light most favorable to Vista, Vista has been unable to point to any evidence which would, even in theory, entitle it to contractual indemnification from Andron. The relevant contracts, even if

they applied, contain no provisions to suggest that Andron agreed to indemnify Vista. Vista's claim for contractual indemnification must, therefore, be dismissed.

### b. Common Law Indemnity

However, Vista may be entitled to common law indemnity. To maintain this claim, Vista must show that it was free from negligence, and that Andron's negligence contributed to the injury. *Goodman*, 850 F.Supp.2d at 390. A reasonable jury may find that Vista was free from negligence, insofar as it reasonably carried out its duty to clear the area of ice and snow, and this its efforts did not create or exacerbate the dangerous condition. As stated above, a reasonable jury can also find that Andron was negligent. Because these are triable questions of fact to be decided by a jury, Andron is not entitled to summary judgment to dismiss this claim.

### 3. Andron's Counterclaims Against American Panel

### a. Contractual Indemnity

Andron seeks summary judgment on its claim for contractual indemnity against American Panel, which American Panel moves to dismiss. The parties do not dispute that American Panel and Andron had signed a written contract in effect during the relevant period. [Andron's Exhibit R, Dkt. 117-19.] The contract reads, in relevant part:

> To the fullest extent of the law, you [American Panel] agree to defend, indemnify, and hold each Indemnitee [Andron and the Briarcliff LLCs] harmless from all claims, losses, demands, suits, actions, damages, fines, penalties, against the Indemnitee(s) for bodily injury…which may arise from your Work (the "Claims") . . . As used herein, Claims shall mean those claims (a) which may arise out of, in connection with, or as a consequence of your work or operations. . . .

*Id.* at 3, Section 5.

American Panel's argument that the indemnity provision does not apply because American Panel was free from negligence is misplaced. Although New York law bars a party

20

from seeking indemnity for its own negligence, New York law does not bar indemnity simply because the indemnitor is free from negligence. *See Dwyer*, 819 F.Supp.2d at 331. In *Dwyer*, a subcontractor, OH & M, moved to dismiss a claim for contractual indemnity on the basis that it was not negligence. The Court stated, "However, nothing in the indemnification provision suggests that its enforceability depends on whether OH & M was negligent." *Id.* The Court thus held that OH & M was contractually obligated to indemnify the owner and the general contractor. *Id.* In the same vein, the applicability of the indemnification provision between Andron and American Panel does not depend on whether American Panel was negligent.

Nevertheless, the indemnification provision is void in its entirety as a matter of law. The New York Court of Appeals has held that where a contract requires a subcontractor to indemnify a general contractor without limitation, it thus requires indemnification for injuries caused by the general contractor's negligence, and therefore the entire agreement would be unenforceable as a matter of law. *Itri Brick & Concrete Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 786, 795-96 (N.Y. 1997). *Itri Brick & Concrete Corp.* dealt with an indemnification provision where the subcontractor agreed to hold the general contractor harmless "from all liability" for claims of injuries, "while on or near the project," and "without regard to whether Itri [the subcontractor] or its employees were a cause of the injury and notwithstanding culpability by MNT [the general contractor] in whole or in part." *Id.* at 793.

The Court of Appeals held that the entire indemnification was void as against public policy under New York General Obligations Law § 5–322.1. *Itri Brick & Concrete Corp.*, 89 N.Y.2d at 795. The court expressly rejected the parties' argument that the indemnification provision could still be enforceable only to the extent that the subcontractor would not need to indemnify the general contractor for the general contractor's own negligence. "Section 5–322.1

21

makes no attempt to salvage that part of an indemnification contract that would require a subcontractor to indemnify a general for the subcontractor's negligence only." *Id.*  Thus, the Court of Appeals held that the entire provision was void.

Andron makes the same argument here, insofar as it seeks indemnity only to the extent of American Panel's negligence.  This is the same argument that was expressly rejected in *Itri Brick & Concrete Corp.*.  *Id.* at 795.  As the Court of Appeals explained, the relevant inquiry is not the extent to which the parties seek to enforce the provision after the fact, but whether the provision, as written and at the time of the contract, would run afoul of Section 5-322.1.  *Id.* Andron's argument must therefore be rejected.

The indemnification clause contained a provision that American Panel would only be liable "[t]o the fullest extent of the law."  [Andron's Exhibit R, Dkt. 117-19 at 3 Section 5.] Courts in this district have discussed similar language in light of *Itri Brick & Concrete Corp.*. *See, e.g., Bright v. Tishman Const. Corp. of New York*, Case No. 95 Civ. 8793(DLC), 1998 WL 63403, at *4 (S.D.N.Y. Feb. 17, 1998).  In *Bright*, a similar indemnification provision contained the language, "to the fullest extent permitted by the law."  *Id.* at *4.  Relying on *Itri Brick & Concrete Corp.*, the Court held that this phrase was "an insufficient limitation on the indemnification provision to remove the contract from the prospective scope of Section 5-322.1" *Id.* (citing *Itri Brick & Concrete Corp.*, 89 N.Y.2d at 795).  "To be effective, the saving language must indicate with sufficient clarity that the indemnification does not run to the negligent conduct of the indemnitee.  Any other result would defeat the purposes underlying Section 5–322.1."  *Id.*

Here, there is no such language to salvage the indemnification provision from Section 5-322.1.  In fact, the indemnification provision suggests just the opposite, implying that American

Panel's liability may extend beyond its own actions. The provision states that American Panel must hold Andron and the Briarcliff LLCs harmless for all "Claims." The definition of "Claims" includes claims "which may arise out of, in connection with, or as a consequence of your work or operation under this Subcontract." [Andron's Exhibit R, Dkt. 117-19, at 3 Section 5.] Based on a plain reading, "as a consequence of your work" refers to acts by American Panel. But the phrase "in connection with . . . your work" must then thus refer to acts performed not by American Panel, but by another tortfeasor in connection with American Panel's work.

Notably, Andron initially advocated for this broad interpretation of the indemnification provision. [*see* Andron's Memorandum of Law, Dkt. 120 at 20 ("In fact the language suggests that as long as plaintiff's accident **arose out,** or **in connection with** American Panel Tech's work at the premises, then Andron is entitled to contractual indemnification from American Panel Tech.") (emphasis in original); Andron's Opposition to American Panel's motion, Dkt. 134 at 5 ("[T]he term 'arises out of' has broader significance than the words 'caused by'....Such a phrase focuses not upon the precise cause of the accident....").] In those pleadings, Andron argued that the indemnification provision should be interpreted broadly to apply to acts beyond American Panel's negligence, but was silent as to whether the provision could extend to Andron and/or Briarcliff's negligence. Only later did Andron assert that the indemnification provision would not require American Panel to reimburse Andron for Andron's own negligence.

I therefore conclude that this contractual language runs afoul of Section 5-322.1 and is void in its entirety.[6]  Andron and the Briarcliff LLCs are not entitled to contractual indemnification, and American Panel is entitled to a dismissal of this claim as a matter of law.

**b.    Common Law Indemnity, Contribution, and Negligence**

Andron and the Briarcliff LLCs' counterclaims for common law indemnity, contribution, and negligence may be considered together, because stating a claim for negligence is a threshold inquiry to establish entitlement to common law indemnity and contribution.  *Goodman*, 850 F.Supp.2d at 390.  In other words, Andron can only maintain a claim for common law indemnity and contribution against American Panel if it can show that American Panel was negligent as to Plaintiffs.  Andron seeks summary judgment granting each claim, and American Panel seeks summary judgment dismissing each.  American Panel is entitled to summary judgment because Andron has failed to state a claim for negligence.

As a matter of law, Andron cannot show that American Panel owed a duty of care to Plaintiff.  The general rule in New York is that a subcontractor, such as American Panel, does not owe a duty of care to employees of its own subcontractors, in this case Plaintiff, to provide a safe worksite.  *Kendle v. Aug. Bohl Contracting Co.*, 242 A.D.2d 848, 850 (N.Y. App. Div. 3d Dep't 1997).  Such a duty may only arise if the subcontractor exercised supervisory control over the work of its subcontractor's employee.  *Id.*  Alternatively, a subcontractor may owe a duty of care to its own subcontractor's employees, "where the work it performed created the condition

---

[6]      Though Vista did not raise this argument, it is worth noting, for the sake of completeness and consistency, that N.Y. General Obligations Law Section 5-322.1 would not render the indemnification provision between Vista and Andron void.  That provision contained specific language that Vista would only be required to indemnify Andron for Vista's own acts. [Andron's Exhibit Q, 117-18 at 1.] The provision is therefore sufficiently clear that Vista would not be required to indemnify Andron or the Briarcliff LLCs for the indemntees' own negligent conduct.

that caused the plaintiff's injury, even if it did not possess any authority to supervise and control the plaintiff's work or work area." *Sledge v. S.M.S. Gen. Contractors, Inc.*, 151 A.D.3d 782, 783 (N.Y. App. Div. 2d Dep't 2017).

Looking at the evidence in the light most favorable to Andron, Andron fails to point to any evidence that American Panel exercised supervisory control over Plaintiff's work on the construction site. There is no evidence to suggest that American Panel had the responsibility to position someone on the worksite or to accompany Plaintiff while he worked. There is also no evidence that American Panel was obligated to visit the site while Plaintiff was present. No employee from American Panel was present onsite, nor can Andron show that American Panel employees were required to be onsite. Additionally, Plaintiff was allegedly injured due to a dangerous condition on the premises, not that manner in which work was being performed, and Andron offers no evidence to suggest that American Panel's work caused the black ice on which Plaintiff allegedly slipped.

Additionally, Andron cannot show that American Panel created the dangerous condition, that is, the black ice in the loading area. Andron refers to the Camden Harris trailer which Plaintiff was picking up from the construction site, and argues that somehow the trailer added to the dangerous condition. This argument is specious at best. A reasonable jury could not find that the trailer itself somehow created the black ice.

Alternatively, Andron asserts that American Panel owed Plaintiff a duty of care based on a theory of third-party liability, that American Panel had a duty to inspect Plaintiff's work area when delivering the panels, based on the contract between Andron and American Panel which stated that American Panel shall "[p]erform regular (documented) safety inspections." [Andron's Exhibit R, Dkt. 117-19 at 5.] Notably, the contract does not specify what American Panel had

agreed to inspect. A reasonable jury could conclude that American Panel took on the responsibility to inspect its own work areas, but it cannot be said that American Panel agreed to inspect the Briarcliff Manor construction site when it had no presence there whatsoever.

Nevertheless, to the extent Andron contends that American Panel owed a duty of care to Plaintiff based on American Panel's contract with Andron, we return to the *Espinal* factors. As a threshold matter, the *Espinal* factors are not limited to subcontractors who are responsible for ice and snow removal. *Klein*, 2018 WL 4265885, at *4 ("Indeed, *Espinal*, by its very terms, applies generally to 'contractual situations involving possible tort liability to third persons.'") (internal citations omitted). The first exception cannot be found to have applied because there are no facts to suggest that American Panel caused the black ice to accumulate, nor did American Panel's work contribute to the creation of the black ice. As to the second exception, nothing in the record suggests that Plaintiff relied on American Panel to provide a safe worksite at the Briarcliff Manor site. The third exception also does not apply because American Panel did not entirely displace Andron's duty to provide a safe worksite. Thus, none of the *Espinal* exceptions apply as a matter of law.

Accordingly, Andron fails to show, as a matter of law, that American Panel owed a duty of care to Plaintiff, and therefore American Panel cannot be held liable to Plaintiff in tort as a matter of law. Notably, Plaintiffs dismissed their action against American Panel. American Panel is entitled to summary judgment on these claims, and Andron's motion for summary judgment is denied.

### d. Failure to Procure and Maintain Liability Insurance

American Panel moves to dismiss Andron's claim for breach of contract and warranty, in which Andron alleges that American Panel failed to maintain liability insurance. American

Panel argues that it had obtained proper liability insurance from Lloyd's of London in compliance with its contractual obligations and named Andron and the Briarcliff LLCs as additional insureds. However, for reasons unknown to the Court, American Panel failed to produced proof that it obtained insurance. None of American Panel's motion exhibits show proof that it obtained insurance, and there is no such document in the record.

Nevertheless, Andron did not expressly respond to American Panel's motion to dismiss this claim. In fact, Andron's only reference to this cause of action is a general statement in its notice of motion that it seeks summary judgment on all of its counterclaims. Andron did not address this counterclaim in its own motion for summary judgment, nor did Andron oppose American Panel's application for dismissal of this claim in its response to American Panel's motion, even after American Panel expressly referred to the insurance policy. Given Andron's failure to respond to American Panel's express assertion that it obtained insurance from Lloyds of London, Andron's claim is deemed abandoned and is dismissed. *Jackson*, 766 F.3d at 195.

### 4. American Panel's Counterclaims Against Andron

Andron moves to dismiss American Panel's counterclaims for contractual indemnity, common law indemnity, and contribution. American Panel's claim for contractual indemnity must be dismissed as a matter of law because the contract between American Panel and Andron did not contain a provision that would entitle American Panel to indemnity. Additionally, American Panel's claims for indemnity and contribution may be dismissed because they would be necessarily be predicated upon Plaintiffs or some other party obtaining a judgment against American Panel. Plaintiffs no longer seek a judgment against American Panel, and no other claims against American Panel survive. These counterclaims are accordingly dismissed without prejudice.

## V.  CONCLUSION

Accordingly, Andron's motion is **GRANTED** to the extent that: Plaintiffs' Labor Law § 200 and common law negligence claims are dismissed as to the Briarcliff LLCs; Plaintiffs' Labor Law § 241(6) claims are dismissed as to Andron and the Briarcliff LLCs; Plaintiffs' second cause of action concerning regulatory violations is dismissed as to Andron and the Briarcliff LLCs; Plaintiffs' third cause of action concerning loss of consortium is dismissed as to the Briarcliff LLCs; Vista's crossclaim for contractual indemnity is dismissed; and American Panel's counterclaims are dismissed.

Andron's motion is **DENIED** to the extent that: Plaintiff's Labor Law § 200, common law negligence, and loss of consortium claims against Andron are not dismissed; Andron's crossclaims against Vista for contractual indemnity, common law indemnity, and breach of contract and warranty are not granted as a matter of law; Vista's crossclaim for common law indemnity and contribution are not dismissed; and Andron's counterclaims against American Panel are dismissed.

Vista's motion is **GRANTED** to the extent that Plaintiffs' Labor Law § 241(6) claims and Plaintiffs' second cause of action concerning regulatory violations are dismissed as against Vista.  Vista's motion is **DENIED** to the extent that Plaintiffs' Labor Law § 200, common law negligence, and loss of consortium claims are not dismissed; and Andron's claim for contractual and common law indemnity and breach of contract and warranty are not dismissed.

American Panel's motion is **GRANTED** in all respects, and American Panel is dismissed from the case.

The Court will conduct a pretrial conference in this matter on **July 8, 2021 at 10:00 am.**

The Clerk is respectfully directed to terminate the motions at Dkt. 111, 116, and 121.


Dated: May 19, 2021
      White Plains, New York

**SO ORDERED**

Paul E. Davison, U.S.M.J.